United States District Court
Southern District of Texas
**ENTERED**
February 28, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARCUS E ADAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00218 |
| | § | |
| THE CITY OF TAFT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

On September 8, 2022, Plaintiff Marcus Adams, proceeding *pro se*, filed a complaint against The City of Taft, Joe Sandoval and Melissa Gonzalez. (Case No. 2:22-mc-115, D.E. 1). Plaintiff filed an Amended Complaint on October 27, 2022. (D.E. 12). With the Court's leave, Plaintiff filed a Second Amended Complaint on December 2, 2022. (D.E. 23). This case has been referred to the undersigned for case management pursuant to 28 U.S.C. § 636. Pending is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. (D.E. 25). Plaintiff has filed a response, Defendants have filed a reply, and Plaintiff has filed a sur-reply. (D.E. 26, D.E. 30, and D.E. 31).

Plaintiff alleges a city employee used a racial slur against him at city council meeting where Plaintiff was speaking as a private citizen. Plaintiff's allegations are disturbing. The use of racial slurs or epithets have no place in a civilized society. However, Plaintiff does not make his claim in connection with housing, credit, employment, public accommodations, or other right protected by anti-discrimination laws, civil rights statutes,

1 / 17

or other authorities.  This unfortunate case involves the alleged single use of a racial epithet that was not made in connection with the deprivation of any of Plaintiff's established rights.  The undersigned is unaware of any case finding that a single use of a racial epithet by a municipal employee against a member of the public constitutes actionable conduct under any theory of law applicable in this jurisdiction.

Therefore, for the reasons discussed in more detail below, the undersigned recommends Defendants' Motion to Dismiss be **GRANTED** and this case be **DISMISSED with prejudice**. (D.E. 25).

## I. PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, proceeding *pro se*, alleges that on April 12, 2022 at a Taft City Council meeting, he addressed the council regarding his "input/thoughts when it came to the city itself breaking local and state laws" related "to [the] use [of] city vehicles on public streets uninsured and unregistered for 5 years." (D.E. 23, Page 2).  Plaintiff further alleges he stated "it was a public liability for the city and needs immediate attention." (D.E. 23, Page 2).  Plaintiff alleges he "was concerned that someone would eventually get seriously hurt and the city would be liable for everything" and Defendant Gonzalez, the City Manager, "tried to pass off documents to fool the public and say this vehicle was insured and it was in fact not legally insured or registered…" (D.E. 23, Pages 2-3).  Plaintiff alleges that after he was done voicing his concerns, Defendant Sandoval, Public Works Director, then called him a "N****r" in Spanish in a threatening tone. (D.E. 23, Page 3).  Specifically, Plaintiff alleges Defendant Sandoval stated "Pinche Mayate piensa que es la mierda." (D.E. 23,

Page 7, n. 1). Plaintiff further alleges that at some point during the meeting, Defendant Gonzalez "in fact stated to me, 'do you want to go down that road, what do you think is going to happen now.'" (D.E. 23, Page 3). Plaintiff alleges he felt offended, hurt and degraded. (D.E. 23, Page 3).

Additionally, Defendants have attached to their Motion the minutes of the April 12, 2022 Taft City Council meeting and request the Court take judicial notice of them. (D.E. 25, Page 2, n. 3 and D.E. 25-1). These minutes are signed by the Taft Mayor and City Secretary. (D.E. 25-1, Page 5). The undersigned grants this request as "courts may take judicial notice of public records like a city council's meeting minutes" and taking judicial notice of them does "not transform [the] motion into a motion for summary judgment." *Johnson v. Bowe*, 856 F. App'x 487, 492 (5th Cir. 2021) (citations omitted) ("[T]he district court also properly considered the minutes as part of the pleadings.")

The relevant portion of the minutes are as follows:

> Marcus Adams, 614 San Patricio, stated that no city official is in charge of the police department and they answer to a certain person. He also stated that if there are any investigations going on against anyone in the city, they outside source the investigation so there would not be any conflict of interest. Mr. Adams also brought up that the dump truck is on the road uninsured and unregistered. He stated that if the truck is in an accident, it could bankrupt the city. Mr. Adams also stated that the city does not need to contract with SMMP because nothing has been done in regards to development." (D.E. 25-1, Page 1).

## II.   12(b)(6) MOTION STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In

deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). To survive the motion, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face" and must plead those facts with enough specificity "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* (citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations" to be entitled to the assumption of truth. *Id.* at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly

give rise to an entitlement to relief."). Under Rule 8(a)(2), plaintiffs are not required to include "detailed factual allegations," but at the same time "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" is needed. *Iqbal*, 556 U.S. at 678. "To survive a Rule 12(b)(6) motion to dismiss, the complaint 'does not need detailed factual allegations,' but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, 'raise a right to relief above the speculative level.'" *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) (citing *Twombly*, 550 U.S. at 555).

When dealing with cases where the plaintiff proceeds *pro se*, it is well-established that the *pro se* plaintiff's complaint is held to less stringent standards than formal pleadings drafted by lawyers. *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981) (citation omitted). While *pro se* plaintiffs are entitled to more liberal constructions of their pleadings by courts, the *pro se* plaintiff still must comply with the Federal Rules of Civil Procedure, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the motion to dismiss." *Christian Leadership Conference v. Supreme Court of State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citation omitted).

### III. ANALYSIS

Defendants assert all of Plaintiff's claims should be dismissed because he failed to state cognizable or viable claims and also failed to support each cause of action with sufficient facts and therefore, his claims are all deficient. The undersigned agrees with Defendants and recommends Plaintiff's Second Amended Complaint is a conclusory,

formulaic recitation of the elements of his proposed causes of action that fail to meet the plausibility standard of *Iqbal and Twombly* under Rule 12(b)(6). Even under the liberal construction given to *pro se* plaintiffs' pleadings, Plaintiff's allegations are at best vague, conclusory and entirely lacking in factual support.

### A. Plaintiff's First Claim for Relief

Plaintiff lists several claims under his first claim for relief specifically (1) Title VII employment retaliation; (2) equal protection; (3) 42.07 harassment; (4) discriminatory harassment; and (5) municipal liability under 42 U.S.C. § 1983. (D.E. 23, Pages 6-9).

Plaintiff first cites to the Title VII retaliation standard which protects employees from retaliatory actions by employers for engaging in protected activity, such as reporting discriminatory behavior. (D.E. 13, Pages 6-7). He provides no facts in support of this claim. Plaintiff clearly fails to state a viable employment retaliation claim as he does not allege he is an employee of the City of Taft, fails to state who his employer is, was not in his workplace at the time the discriminatory comment was made and has not only failed to plead what protected activity he participated in but also any adverse employment action by his employer. (D.E. 13, Pages 6-7). Therefore, the undersigned recommends this claim be dismissed.

Plaintiff next lists a claim titled "equal protection claims," asserting a claim may be "brought where one class of people is treated differently by a Federal, state or local government or its officials. This is the case when minorities bring discrimination claims against governmental entities." (D.E. 23, Page 7). Again, Plaintiff cites to no facts in

support.  In his response to the pending Motion, Plaintiff asserts that being called a n****r with a tone of violence in an open public session with the city council present is racial discrimination and conclusory states he "was in fact harassed afterwards, by the Mayor of Taft."  (D.E. 26, Page 5).  However, as cited by Defendants, while the Fifth Circuit has recognized that the use of a racial epithet is indicative of racial animus, verbal abuse standing alone is insufficient to support an equal protection claim under § 1983.  (D.E. 25, Page 9); *Jackson v. Harris Cty., Tex.*, NO. H-17-3885, 2020 WL 973387, at *14 (S.D. Tex. Feb. 26, 2020) ("The Fifth Circuit recognizes that 'racial epithets that accompany harassment or violation of established rights may amount to a separate equal protection violation.'") (citations omitted).  Here, while Plaintiff alleged he was called a racial epithet at the city council meeting, he fails to plead any facts in his Second Amended Complaint which show additional harassment or other conduct which deprived him of established rights.  *Id*.  Therefore, the undersigned recommends Plaintiff has not sufficiently pleaded an equal protection claim.[1]

For his third claim, Plaintiff lists "42.07 harassment."  However, Plaintiff has again provided no facts or argument in support of this claim although he states in his response that he "has text messages proving the harassment that accrued after that embarrassing

---

[1] While the Motion to Dismiss addresses a retaliation equal protection claim, Plaintiff cited only the Title VII standard and therefore, the undersigned declines to address a claim other than one under Title VII. (D.E. 23, Pages 6-7). However, Defendants arguments are well taken if Plaintiff had raised this claim as there is no cause of action for retaliation under the Equal Protection Clause. *Fisher v. Dallas Cty*., No. 3:12-cv-3604-D, 2014 WL 4797006, at *9 (N.D. Tex. Sep. 26, 2014) (citations omitted).  Nor has Plaintiff pleaded any allegations that Defendants committed retaliatory acts in his Second Amended Complaint.

moment at that council meeting. Racial text messages that will hurt any black person." (D.E. 23, Page 7 and D.E. 26, Page 5).² Further, while not fully cited by Plaintiff, it is clear Plaintiff is attempting to assert a claim under Texas Penal Code § 42.07 which handles criminal harassment committed via telephone or electronic communication. As asserted by Defendants, the Texas Penal Code does not create a private right of action and therefore, the undersigned recommends this claim be dismissed as it fails to state a viable claim for relief. *Tummel v. Milane*, No. 7:18-cv-339, 2019 WL 366708, at *7 (S.D. Tex. Jan. 30, 2019), *aff'd*, 787 F. App'x 226 (5th Cir. 2019) (Affirming the district court's dismissal of plaintiffs' claims under the Texas Penal Code because "it is a criminal statute and provides no indication this was intended to provide a private right of action."); *Max-George v. Houston Dep't*, No. H-17-2264, 2020 WL 6322283, at *2 (S.D. Tex. Oct. 28, 2020) ("[T]he Texas Penal Code provisions do not create a private cause of action" permitting a private citizen to pursue civil damages for the violation of a criminal statute.)

In his fourth claim, Plaintiff does not detail which statute or law he is suing for "discriminatory harassment," however, he lists it under the § 1983 heading and also argues the City of Taft is liable under § 1983 municipal liablility. (D.E. 23, Pages 7 and 9). Section 1983 provides a private right of action against parties acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" to redress the deprivation of rights secured by the United States Constitution or federal law. *City of St. Louis v.*

---

²Plaintiff did not include any allegations related to text messages in his Second Amended Complaint, he did not attach them to his response, nor does he identify the contents of the messages, when they were sent or who sent them.

8 / 17

*Praprotnik*, 485 U.S. 112, 121 (1988) (citing 42 U.S.C. § 1983). As such, to state a claim under § 1983, a plaintiff must demonstrate: (1) a violation of the United States Constitution or a federal law; (2) and that the violation was committed by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). A person for these purposes includes a local governing body or municipality if the action claimed to be unconstitutional was implemented by a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by" that body's officers. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 659 (1978) (Local governments may also be sued for constitutional deprivations pursuant to a custom even if that custom has not received formal approval). However, a municipality cannot be held liable under § 1983 on a theory of *respondeat superior*. *Id*. Rather, a municipality can be subjected to civil liability "only if the alleged constitutional violations are 'directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability.'" *Robinson v. Hunt Cty., Tex.*, 921 F.3d 440, 449 (5th Cir. 2019) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). "[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski*, 237 F.3d at 578 (citing *Monell*, 436 U.S. at 694). These three principles "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Id*. "While an unconstitutional official policy renders a municipality culpable under § 1983, even a

facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result. *Id*. (citation omitted); *Balle v. Nueces Cty.*, 952 F.3d 552, 557-58 (5th Cir. 2017) (citations omitted).

Here, the undersigned recommends Plaintiff's claims for discriminatory harassment and §1983 municipal liability both fail because he fails to plead what right secured by the Constitution or law of the United States was violated, he fails to plead facts showing he was deprived of any right by a person acting under color of state law, he further fails to sufficiently identify a policy or custom and he fails to identify a policymaker. In his Second Amended Complaint, Plaintiff alleges:

> "[t]he City of Taft is liable because it sanctioned the custom, practice and/or policy or procedure of illegal searches, illegal seizures and/or violating their rights to be free of unwanted search and seizure. Defendants' actions were a customary practice and/or policy or procedure that was sanctioned by the City of Taft out of which deprived Plaintiff of his civil rights by statute and by both the Texas and United States Constitutions LIbaility for the City of Taft is established under § 1983 because the violations, with little or no justification, and/or to overstep the bounds of search and seizures is a persistent, widespread city/county employees-namely Joe Sandoval-that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official municipal policy. The City of Taft has actual or constructive knowledge of this practice, custom, and/or policy or procedure and sufficiently numerous prior incidents of Joe Sandoval and numerous officers' harassment establishes custom and accession to that custom by the City's policy makers. The City of Taft unspoken policy of harassing its citizens is a decision that reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. In the alternative, the City of Taft is liable under 1983 for failure to adopt a policy precluding officers and directors from violation citizens' rights because such failure to adopt such a policy such as Cultural Diversity training is one of intentional choice.

(D.E. 23, Pages 7-8).

Plaintiff's Second Amended Complaint is entirely devoid of any supporting facts for these conclusory claims as he does not provide any details of when he was subjected to an illegal search and seizure, he does not provide any details to support his allegation that there is a custom, practice or policy of allowing illegal searches and seizures by the City of Taft, he does not detail any other incidents involving Defendant Sandoval and he does not provide any details related to his conclusory statement that there is a pattern and practice of racism and retaliation by the City of Taft. The sole factual allegation in Plaintiff's Second Amended Complaint is that Defendant Sandoval called him a n****r in Spanish at a city council meeting and, while reprehensible, this isolated act is insufficient to state a claim under § 1983. *Robinson*, 921 F.3d at 449 (citation omitted).

### B. Plaintiff's Second Claim for Relief

Plaintiff lists his second claim for relief as "discriminatory civil assault" citing to both Texas Penal Code § 22.01 and 42 U.S.C. § 14141. (D.E. 23, Pages 9-10). However, as with his previous claims, he again provides no arguments or facts in support. As discussed previously in this M & R, the Texas Penal Code does not create a private right of action permitting a private citizen to pursue civil damages for violation of a criminal statute and therefore, the undersigned recommends this claim be dismissed as it fails to state a viable claim for relief. *Tummel*, 2019 WL 366708, at *7; *Max-George*, 2020 WL 6322283, at *2. Similarly, 42 U.S.C. § 14141, now codified at 34 U.S.C. § 12601, does not provide a private right of action to a citizen. Instead, it provides that a civil cause of

action is available to the United States Attorney General, "for or in the name of the United States."[3]  (D.E. 25, Page 17).  Therefore, the undersigned recommends these claims be dismissed.

Further, construing Plaintiff's pleading liberally, the undersigned infers Plaintiff alleges a civil assault claim under Texas law.  However, he has failed to allege any facts that he was subjected to bodily injury, offensive touching or threat of imminent bodily injury by any Defendant and therefore, the undersigned recommends this claim also fails.[4]

### C. Plaintiff's Third Claim for Relief

Plaintiff states his third claim is for intentional infliction of emotional distress under Texas law against Defendant Sandoval in his individual capacity.  (D.E. 23, Page 10).  Again, as Plaintiff provides no argument or facts in support.  Under Texas law, Plaintiff

---

[3] This section allows the United States Attorney General to initiate "a civil action to obtain appropriate equitable and declaratory relief to eliminate a pattern or practice" "of conduct by law enforcement officers or by officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles that deprives persons of the rights, privileges, or immunities secured or protected by the Constitution or laws of the United States."

[4] In Texas, to prevail on a claim for civil assault, the plaintiff must establish the same elements required for criminal assault. *Rockwell v. Brown*, 664 F.3d 985, 993 (5th Cir. 2011) (citation omitted); *Wellman v. HEB Grocery Co.*, No. 4:20-cv-3139, 2021 WL 5915581, at *2 (S.D. Tex. Dec. 7, 2021) (same).  A defendant commits assault if he (1) "intentionally, knowingly, or recklessly causes bodily injury to another;" (2) "intentionally or knowingly threatens another with imminent bodily injury"; or (3) "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." Tex. Penal Code § 22.01.  In their Motion, Defendants also address governmental immunity and the Texas Tort Claims Act.  (D.E. 25, Pages 15-16).  However, the undersigned declines to address these arguments, as well as *respondeat superior*, as a recommendation is made that Plaintiff has not sufficiently alleged a civil assault claim.

must plead the following elements for intentional infliction of emotional distress: "(1) the defendant acted intentional or recklessly; (2) the defendant's conduct must have been extreme and outrageous-so outrageous as to go beyond all possible bounds of decency; (3) the actions of the defendant must have cause the plaintiff to suffer emotional distress and (4) the distress must be severe." *Garnica v. Zale Lipshy Univ. Hosp.*, No. 3:03-cv-637-P, 2004 WL 330675, at * 6 (N.D. Tex. Feb. 10, 2004) (citing *Walker v. Thompson*, 214 F.3d 615, 628 (5th Cir. 2000), *overruled in part on other grounds by Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 67 (2006)). The Fifth Circuit has previously found "[i]nsults, indignities, threats, annoyances, or petty oppressions, without more, do not rise to the level of intentional infliction of emotional distress." *Id*. Further, even a "supervisor's use of ethnic slurs against an employee on a few occasions," while condemnable, "was not sufficiently extreme or outrageous to support a claim for intentional infliction of emotional distress." *Walker*, 214 F.3d at 628. Accordingly, Plaintiff's allegation of one instance of the use of a racial epithet, while reprehensible, is insufficient to plead extreme and outrageous conduct under Texas law. (D.E. 25, Pages 17-19). Therefore, the undersigned recommends this claim be dismissed.

   D. **Plaintiff's Fourth Claim for Relief**

Plaintiff lists his fourth and final claim as retaliation under Texas Law, Section 42.07(a)(1)(2). (D.E. 23, Page 11). While not fully cited by Plaintiff, it is clear Plaintiff is attempting to assert another claim under Texas Penal Code § 42.07 which handles criminal harassment. Again, the Texas Penal Code does not create a private right of action

and therefore, the undersigned recommends this claim be dismissed as it fails to state a viable claim for relief. *Max-George*, 2020 WL 6322283, at *2.

### E. Remaining Claims

In the Motion to Dismiss, Defendants also assert any miscellaneous allegations referenced by Plaintiff under 18 U.S.C. § 241, the First Amendment and for defamation, while not specifically listed as claims in the Second Amended Complaint, should also be dismissed. (D.E. 25, Pages 19-23). In his Response, Plaintiff addresses only defamation[5] asserting his "claim was in fact published [because] all city council meetings are recorded and videotaped." (D.E. 26, Page 8). However, as argued by Defendants, "[t]he first element of defamation in Texas is that the defendant must have made a false statement about the plaintiff [and racial] epithets are not false statements, but name-calling." *Riser v. Paulson*, No. V-08-2, 2008 WL 4900181, at *2 (S.D. Tex. Nov. 7, 2008) (Granting motion to dismiss a defamation claim where plaintiff alleged his name was publicly announced over a P.A. system surrounding his residence calling him derogatory names such as mother****r and n****r).

### F. Conclusion

Plaintiff lists causes of action and conclusory asserts he was discriminated and retaliated against and harassed. However, Plaintiff does not provide any further facts in support other than to plead he was called a racial epithet at the city council meeting. It is

---

[5] As Plaintiff does not respond to Defendants' other arguments and did not specifically raise these allegations as additional claims in his Second Amended Complaint, the undersigned does not address these arguments.

clear Plaintiff's complaint does not contain sufficient allegations but instead alleges certain causes of action in a conclusory fashion which is insufficient to survive the pending Motion. Additionally, while Plaintiff alleges he suffered injury, he does not provide any details in support, generally pleading that he "has been caused to suffer general damages which include but are not limited to the following: both physical and emotional injury…pain and suffering, emotional and mental distress, and personal humiliation and shock" for which he seeks $1,000,000.00 in damages as well as punitive damages in the amount of $400,000.00 against Defendant Sandoval. (D.E. 23, Pages 11-12).

Therefore, the undersigned recommends Plaintiff's complaint be dismissed as it fails to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. While he does not request leave to amend, the undersigned recommends Plaintiff be denied leave to do so. Under Fed. R. Civ. P. 15(a)(2), leave to amend should be freely given "when justice so requires." However, leave to amend may be denied for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., [or] futility of amendment ...." *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 591 (5th Cir. 2016) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Here, the record does not support allowing further amendment. The undersigned recommends Plaintiff not be granted leave to again amend his complaint. Plaintiff was given a "final opportunity to amend his complaint" and he has done so by filing a Second Amended Complaint. (D.E. 16 and D.E. 23). Plaintiff was specifically cautioned that, "[a]ny claims which Plaintiff

wishes to raise must be stated in the second amended complaint. If a claim is not included in the second amended complaint, it is not before the Court. *Plaintiff is admonished that he may not be given any additional opportunities to amend this case. This is Plaintiff's final opportunity to amend his complaint.*" (D.E. 16) (emphasis in original). Lastly, from the limited information provided in Plaintiff's Second Amended Complaint, it appears none of Plaintiff's claims are legally cognizable and would fail as a matter of law, making an amendment futile.[6]

## IV.    RECOMMENDATION

For the reasons stated above, the undersigned recommends Plaintiff's allegations are insufficient to survive Defendants' Motion to Dismiss. Accordingly, the undersigned recommends to the Court that Defendants' Motion to Dismiss be **GRANTED** and this case be **DISMISSED with prejudice**. (D.E. 25).

ORDERED on February 28, 2023.

Jason B. Libby
United States Magistrate Judge

---

[6] While Plaintiff conclusory references additional claims in his Response under 42 U.S.C. § 1981 and § 1985, 29 U.S.C. § 201 and 42 U.S.C. 1983 conspiracy, these claims are not included in his Second Amended Complaint and are therefore, not before the Court. (D.E. 26, Page 2, Para. 6 and D.E. 30, Pages 2-6).

NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).